UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHELE PERKINS, Personal Representative of the Estate of Guy Perkins,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES AVIATION UNDERWRITERS INC., *d/b/a* UNITED STATES AIRCRAFT INSURANCE GROUP,<br><br>            Defendant. | Civil No. 04-172-B-W |

### RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Michele Perkins, the personal representative of the Estate of Guy Perkins, brings this action against United States Aviation Underwriters Inc. d/b/a United States Aircraft Insurance Group (USAIG) to recover proceeds from a policy of insurance USAIG issued to the owner of a Cessna model 182S aircraft that Guy Perkins was piloting when it crashed into Saddleback Mountain on October 11, 2002, resulting in the death of Guy Perkins. The parties dispute whether the policy language extends "Voluntary Settlement Coverage" to the Estate and the Estate now moves for summary judgment that it does. In addition, the Estate moves for summary judgment against a subrogation counterclaim. I recommend that the court grant the Estate's motion, in part.

#### FACTS

The following statement of facts is drawn from the parties' Local Rule 56 statements of material fact in accordance with this District's summary judgment practice. See Doe v. Solvay

Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the procedure).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, all evidentiary disputes appropriately generated by the parties' statements have been resolved, for purposes of summary judgment only, in favor of the non-movant.  Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).

Lex Transportation purchased the Cessna 182 in 2000.  (Pl's Statement ¶ 13.)  Because the owner of Lex Transportation, Simon Haberman, was not a licensed pilot, Lex Transportation used a number of different pilots to fly with Mr. Haberman.  (Id. ¶ 14.)  Among those pilots was Guy Perkins, who was hired to fly the aircraft pursuant to a contract, making him an independent contractor.[1]  (Id. ¶ 16.)  Pursuant to the contract, Guy Perkins had the permission of Lex Transportation to use the Cessna 182 whenever it was not being used by Mr. Haberman or Lex Transportation.  (Id. ¶ 17.)

On October 11, 2002, Guy Perkins flew the Cessna 182 to Portland, Maine, for its annual inspection and then flew the airplane back to Keene, New Hampshire, so that he could be paid by Lex Transportation.  (Id. ¶ 18.)  After arriving in Keene, Guy Perkins then flew the Cessna 182 to Caribou, Maine, dropped off a pilot-in-training and then proceeded home alone in the aircraft to Norridgewock, Maine.  (Def.'s Statement Add'l Facts ¶ 11.)  The aircraft crashed into Saddleback Mountain *en route* and Mr. Perkins died on the scene of the accident.  (Id.; Pl.'s Statement ¶ 19.)  Guy Perkins's use of the Cessna 182 at the time of the accident was consistent with the permission he had to use the airplane whenever he wanted.  (Pl.'s Statement ¶ 20.)  Guy Perkins held an FAA private and commercial pilot certificate with FAA instrument rating, and he had flown a minimum of 500 hours as pilot in command, with a minimum of 25 hours in a

---

[1] The parties describe Guy Perkins as a "subcontractor."  The parties agree that Perkins was not an employee of Lex Transportation.

Cessna 182. (Id. ¶ 11.) Based on his FAA certificates and pilot-in-command time, Guy Perkins fulfilled the requirements for a pilot in USAIG's All-Clear Policy. (Id. ¶ 12.)

For a premium of $2,510.00, Lex Transportation, LLC, purchased a "USAIG All-Clear Policy" that insured a year 2000 Cessna 182 aircraft bearing FAA identification no. N100TY. (Pl.'s Statement ¶¶ 1, 3; USAIG All-Clear Policy Coverage Summary Page, Pl.'s Ex. A.) Included in the policy was a "Voluntary Settlement Coverage" endorsement (hereinafter "VSC endorsement"), coverage in addition to the All-Clear Policy's "Combined Liability Coverage." (Pl.'s Statement ¶¶ 6-8.) The Estate's complaint seeks an order concerning, exclusively, whether USAIG is obligated to pay the Estate proceeds under the VSC endorsement. (Id. ¶ 29.) This suit does not concern the question of whether insurance proceeds are owed the Estate under the Policy's "Combined Liability Coverage" provision. The VSC endorsement provides as follows:

> "Your Liability Coverage" is expanded to include Voluntary Settlement Coverage. We'll offer on your behalf and at the request of the "Policyholder," a sum to or for each passenger who receives certain injuries while riding in a covered aircraft with your permission. A passenger is anyone who enters the aircraft to ride in or operate it. It is a requirement of this offer that we receive a complete and final release of all liability for the injuries covered under your "Coverage for bodily injury to passengers only" or your "Combined Liability Coverage for bodily injury and property damage." We will not be obligated to make a Voluntary Settlement offer to pay a claim to, or make a settlement with, a passenger or his or her estate, if you do not request us to do so within one (1) year of the occurrence involving an aircraft covered by this endorsement.
>
> What injuries are covered. Offers may be made to or for passengers who, immediately or within ninety (90) days after an occurrence, die, suffer permanent loss of sight or have an entire hand or foot completely severed in an occurrence while riding in a covered aircraft with your permission.
>
> What we won't cover.
>
> 1.   We won't cover anyone acting as a crew member unless crew member is shown as "covered" in the Schedule shown on this endorsement.
>
> 2.   We won't cover a passenger in any aircraft not listed in the Schedule of

>    endorsement. But this Coverage will apply to substitute aircraft and newly acquired aircraft as described in your "Coverage For Other Aircraft" section of your policy.
>
> 3. We won't pay a claim under this endorsement if the aircraft is being operated by a pilot holding a "Student Pilot's Certificate."
>
> Unlike "Your Liability Coverage," the additional Coverage under this endorsement applies to injuries covered by workers' compensation, unemployment compensation, disability benefit or similar law. But, the Coverage under this endorsement may not be used to satisfy your or your insurance company's obligation under a workers' compensation, unemployment compensation, disability benefit or similar law.
>
> Limits of Settlement. The Limits of Settlement shown below for "each passenger" is the most we'll pay to any one passenger. The Limits of Settlement for "each occurrence" is the most we'll pay for all passengers in any one occurrence.
>
> If a passenger dies or loses both hands, both feet or the sight of both eyes, or a passenger loses one hand or one foot and the sight of one eye; or, one hand and one foot, we'll offer up to the Limits of Settlement for "each passenger."
>
> We'll pay up to one-half of the limits of Settlement for "each passenger" if a passenger loses either one hand, foot or the sight of one eye.
>
> These Limits of Settlement are part of the Limits of Your Coverage shown on the Coverage Summary Page for "Coverage for bodily injury to passengers only" or "Combined Liability Coverage for bodily injury and property damage," and are not in addition to those limits.

Thus, the coverage description is broadly worded to expand coverage to "anyone who enters the aircraft to ride in or operate it," but thereafter the description expressly states that USAIG will not cover "anyone acting as a crew member unless crew member is shown as 'covered' in the Schedule shown on this endorsement." The VSC endorsement's Settlement Schedule is set forth on the next page of the Policy. The Schedule reads as follows:

**Crew is ( ) Covered     Crew is (X) Not Covered**

The Policy does not define "crew." However, Federal Aviation Administration (FAA) regulations define "crewmember" as any "person assigned to perform duty in an aircraft during

4

flight time." (Def.'s Statement Add'l Facts ¶ 6, Docket No. 18.)  The manufacturer of the Cessna 182 Skylane uses the term "crew of one or two" when describing the aircraft's seating capacity: "The Skylane aircraft is an all-metal, single-engine piston, high-wing monoplane with four-person seating capacity including a crew of one or two."  (Id. ¶ 9.)

Within thirty days of the accident, Lex Transportation, LLC, pursuant to the terms of the VSC endorsement under the Policy, demanded that USAIG pay $100,00 to the Estate of Guy Perkins.  (Pl.'s Statement ¶ 22.)  Michele Perkins also made a claim under the Policy and she was and remains ready, willing and able to sign a complete and final release in exchange for the funds.  (Id. ¶ 23.)

USAIG has asserted a counterclaim against Plaintiff, in her capacity as Personal Representative of the Estate of Guy Perkins, for $240,000 that it has paid under the policy to Lex Transportation, LLC, for the destruction of the aircraft, claiming rights of subrogation.  (Id. ¶ 30.)  The counterclaim appears to be premised on a finding by the National Transportation Safety Board ("NTSB"), the arm of the FAA charged with investigating all fatal airplane crashes, that the probable cause of the crash was "[t]he pilot's failure to maintain sufficient altitude while flying in mountainous terrain at night."[2]  (Def.'s Statement Add'l Facts, ¶ 12.)

## DISCUSSION

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required."  Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002).  A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2]    The Estate maintains that Guy Perkins more than once expressed concern over the functioning of the altitude control component of the aircraft's autopilot system.  (Pl.'s Statement ¶ 32.)

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

**1.      Summary Judgment Should Enter Against the Counterclaim.**

The Estate's second claim dispositive argument concerns USAIG's counterclaim. According to the Estate, USAIG cannot pursue a subrogation claim against the Estate because Guy Perkins was an additional insured under the Policy and the law does not permit an insurer to bring a subrogation claim against its own insured. (Mot. Summ. J. at 7-8.) USAIG does not challenge this contention anywhere in its opposition memorandum (Docket No. 17.) Accordingly, summary judgment should enter against the counterclaim.

**2.      The Estate's Motion for Summary Judgment on the Coverage Question Should be Denied.**

The parties agree that New Hampshire law governs their dispute over the proper construction of the VSC endorsement. Pursuant to New Hampshire common law, "interpretation of the language in an insurance policy is a question of law." Wilson v. Progressive N. Ins. Co., 868 A.2d 268, 273 (N.H. 2005). A New Hampshire court must "construe the language of an

6

insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." Id.  If the terms of a policy are "clear and unambiguous," a court must "accord the language its natural and ordinary meaning." Id. "However, if the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer." Id.

The Estate's motion for summary judgment is premised on the proposition that the language of USAIG's VSC endorsement is ambiguous when it is applied to the circumstances of this case because the broad language extending coverage to "passengers," who include "anyone who enters the aircraft to ride in or operate it," of necessity extends to a pilot, whereas the language denying coverage for "anyone acting as a crew member" arguably does not include a pilot, particularly a pilot like Perkins, who was not an employee of the aircraft's owner.  (Mot. Summ. J. at 5.)  According to the Estate, use of the term "crew member" suggests that a crew must contain more than one person and "crew" suggests a "subordinate employee paid to assist the captain."  (Id.)  From USAIG's perspective, there is no ambiguity: the insuring clause does not apply to anyone operating the aircraft, only to passengers "riding" in the aircraft (Def.'s Opp'n Mem. at 3, Docket No. 17) and, in any event, an operator/pilot would be subject to the "crew member" exclusion (Id. at 4).  I conclude that the disputed language in the VSC endorsement has a natural and ordinary meaning and that both parties are misconstruing portions of it in service to their respective clients' interests.

Contrary to USAIG's position, the insuring clause plainly extends coverage to a pilot because "passenger" is defined to include anyone operating the aircraft and, of necessity, a pilot must ride in an aircraft in order to operate it while it is in flight.  Quite plainly, the VSC

7

endorsement extends to "anyone" (i.e., everyone) riding in the aircraft who sustains a covered loss.  However, contrary to the Estate's position, if the term "crew member" is to be given its natural and ordinary construction, it must be understood to include the pilot of an aircraft, particularly a solo-pilot.  This reading is also consistent with the definition given by the FAA, certainly an authoritative source on the matter.  The Estate's suggestions that a "crew" must consist of more than one member and that each individual "crew member" must be understood as someone "subordinate in command" might make sense if the coverage were issued and were being construed in the context of a marine or nautical accident, but Guy Perkins was not "captaining" a vessel for the Coast Guard, Navy or merchant marine.  He was clearly serving as the private aircraft's solitary crew member on the night in question.[3]

The Estate also argues that treating an independent contractor pilot as crew makes no sense because it fails to take into consideration that the VSC endorsement extends insurance coverage for injuries covered by workers' compensation, unlike the Policy's Combined Liability Coverage.  According to the Estate, this fact reinforces the position that a "crew member" must be an employee of the aircraft's owner.  (Mot. Summ. J. at 7.)  I find this to be an unnatural reading of the VSC endorsement.  The fact that the endorsement affords settlement coverage even where workers' compensation coverage is available means that an employee of Lex

---

[3]   The Oxford English Dictionary defines crew in both a nautical sense and an aeronautical sense.  The former sense distinguishes between crew and officers.  The latter does not.

> Crew, n.[1]
> . . . . 6. a. *Naut.* A gang of men on a ship of war, placed under the direction of a petty officer
> . . . .   b. *Naut.* The whole of the men belonging to and manning a ship, boat or other vessel afloat.  (Now the leading sense.)  In a general sense the ship's crew includes all under the captain, but in a more restricted sense it is applied to the men only, to the exclusion of the officers.
> . . . .   c. *Aeronaut.* In full *air crew*.  The persons manning an aircraft or spacecraft. . . . . [e.g.,] 1969 *Listener* 1 May 605/2 Eugene Cernan, one of the three-man crew of the Apollo 10, due to be launched on 18 May.

Oxford English Dictionary (2d ed. 1989), OED Online *available at* http://dictionary.oed.com/cgi/entry/50053886.

Transportation or an employee of another company traveling in the aircraft in connection with his or her work would be covered by the VSC endorsement so long as he or she was not acting as a crew member during the flight.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **GRANT** the plaintiff's motion for summary judgment (Docket No. 13), **IN PART**, by dismissing the defendant's counterclaim.[4]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated August 5, 2005

---

[4] Rule 56 of the Federal Rules of Civil Procedure, unlike Rule 56 of the Maine Rules of Civil Procedure, does not authorize a court to enter summary judgment in favor of the non-movant. Compare Fed. R. Civ. P. 56(c) and Me. R. Civ. P. 56(c). Accordingly, I further recommend that the defendant be ordered to submit an appropriate motion for final judgment because there are no genuine issues of material fact for trial and the dispute is entirely legal in nature.